**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARGARET H. CRAWFORD;** : | |
| **WILLIAM CRAWFORD;** : | |
| **LARHONDA A. BATZEL; and** : | |
| **JAMES F. MURPHY,** : | |
| : | |
| Plaintiffs : | |
| : | CIVIL ACTION NO. 1:05-CV-214 |
| v. : | |
| : | (Chief Judge Kane) |
| : | |
| **JEFFREY MILLER; STEVEN** : | |
| **KREMPASKY; JAMES BOCK;** : | |
| **KIRBY CROFT; CHARLES** : | |
| **STASKIEWICZ; and** : | |
| **ROBERT ERDELY,** : | |
| : | |
| Defendants : | |
| : | |

## MEMORANDUM

Before the Court is Defendants' motion for summary judgment. (Doc. No. 33.) The motion has been fully briefed and is ripe for disposition. For the reasons discussed below, the motion will be granted.

**I.   INTRODUCTION**

Plaintiffs collectively initiated this civil action by a complaint filed pursuant to 42 U.S.C. § 1983 on February 1, 2005, claiming that employees of the Pennsylvania State Police ("PSP") violated their civil rights. (Doc. No. 1.) Plaintiffs filed an amended complaint on October 12, 2005. (Doc. No. 31.) Although the facts specific to each Plaintiff's claim vary, the lawsuit arises, in large part, out of an investigation by the PSP into the unauthorized sale of PSP property on eBay and the actions PSP officers took with respect to Plaintiffs during and after the investigation.

While the Court will discuss the facts underlying each Plaintiff's claim in more detail below, a brief overview of the claims being asserted is appropriate at this time. In the first count of the amended complaint, Plaintiff Margaret Crawford claims that Defendants Croft and Staskiewicz violated her right to be free from malicious prosecution. She alleges that these two PSP officers unlawfully arrested her during their criminal investigation and then brought baseless and false criminal charges against her. (Doc. No. 31, ¶¶ 11-12.) In the second count, Plaintiff William Crawford brings a claim against PSP officer Erdley[1] on the grounds that he unlawfully damaged and retained possession of William Crawford's personal property, his computer, "for no just or proper reason without due process of law." (Id. at 5.) In the third count, Plaintiff James Murphy alleges that Defendants Miller and Bock, also PSP officers, unlawfully took Murphy's personal property, including some items that have allegedly been used by the PSP for display in memorabilia collections.[2] (Id. ¶¶ 19-22.)

In moving for summary judgment, Defendants argue that Margaret Crawford's claim is time-barred by the applicable two-year statute of limitations and that, even if it were timely, Officers Croft and Staskiewicz had probable cause to bring the charges. Defendants argue that Plaintiffs William Crawford and James Murphy have failed to introduce sufficient evidence to establish the necessary elements of their claims, such that there is no genuine issue of material

---

[1] In the brief in opposition to summary judgment, Plaintiff William Crawford asserts that "Erdley[,] Miller and others wrongfully damaged, carried away, and retain [William Crawford's] personal property." (Doc. No. 53, at 1.) However, count II of the amended complaint clearly states a claim only against Defendant Erdley. (Doc. No. 31, at 5.) For that reason, the Court's inquiry will relate only to the conduct and potential liability of Erdley.

[2] In count III, Murphy also asserted a selective prosecution claim. (Doc. No. 31, at ¶ 23.) This claim was dismissed by the Court in an Order dated November 23, 2005. (Doc. No. 32.)

fact and summary judgment is appropriate. Defendant Miller asserts that he had no personal involvement with the handling of Murphy's property, making § 1983 liability unavailable. Finally, "if the preceding arguments are rejected by the Court," all Defendants argue that they have qualified immunity from Plaintiffs' claims. (Doc. No. 34, at 15.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). However, the nonmoving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Id. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable,

conclusory or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." Anderson, 477 U.S. at 248.

## III. DISCUSSION[3]

### A. Margaret Crawford's malicious prosecution claim

#### 1. Background

As a result of the criminal investigation into the sale of PSP property, Margaret Crawford was charged with receiving stolen property and criminal conspiracy on February 11, 2002. The affidavit of probable cause for Margaret's arrest was signed by Defendants Croft and Staskiewicz and was based, in part, on the following facts:

1. A straight jacket was discovered missing from the PSP, Troop J, Lancaster facility;

2. On or about December 5, 2001, a straight jacket bearing the writing "Lancaster

---

[3] The Court has presented the facts in the light most favorable to Plaintiffs as the nonmoving parties. Unless otherwise noted, statements of the facts have been drawn from the statement and counter-statement of material facts. (Doc. Nos. 35 & 54.) The Court has not relied upon alleged facts to which Plaintiffs made properly supported objections; however, where Plaintiffs have offered mere argument or no evidence in support of their denial of a fact alleged in Defendants' properly supported statement, the Court has accepted the fact as true. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (nonmoving party may not rest on allegations in the complaint but must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial"); see also L.R. 56.1 ("Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements").

4

>    Troop J" was being offered on eBay;
>
> 3. The eBay user identifier was that of William Crawford;
>
> 4. A search of the home owned by William and Margaret Crawford turned up a variety of items of PSP property, including the straight jacket;
>
> 5. The e-mail address for the computer which was used for eBay transactions was under the maiden name of Margaret;
>
> 6. An analysis of the computer's hard drive revealed that the Crawfords have sold or attempted to sell items of PSP "memorabilia;" and
>
> 7. Checks for property sold through that computer were made out to Margaret's maiden name.

(Doc. 35, at 17, Exhibit S, Arrest Warrant for Margaret Crawford.) Based on the affidavit of probable cause, a warrant for Margaret's arrest was issued by the District Justice. (Doc. No. 35, at 15-16.) Margaret Crawford was arrested, booked, and placed in handcuffs for a period of time before her arraignment.

The criminal charges were approved by the Bedford County District Attorney, and at the conclusion of the preliminary hearing, the charges of receiving stolen property and criminal conspiracy were bound over for trial. On January 28, 2003, the Bedford County Court of Common Pleas issued an order stating: "And now, January, 28, 2003, after hearing and due consideration, the Order of the Court is as follows: 1. Defendant Ms. Crawford's Motion to Quash/Petition for Writ of Habeas Corpus is granted. All charges against her are dismissed."[4]

---

[4] In dismissing the reciept of stolen property charges, the Bedford County Court of Common Please concluded that the Commonwealth "has failed to establish that Mrs. Crawford had any contact at all with the items in this case, and it has failed to establish that Mrs. Crawford exercised any dominion or control over the items." (Doc. No. 35, at 26-27, Exhibit N.) The court likewise concluded that there was insufficient evidence of an agreement between Margaret and William Crawford and James Murphy to support the conspiracy charge against Margaret Crawford. (Id. at 33.)

(Doc. No. 35, at 43, Exhibit N.)

Plaintiff Margaret Crawford brought the instant action alleging malicious prosecution on February 1, 2005.  To prevail in a § 1983 malicious prosecution action, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Defendants argue that summary judgment on Margaret Crawford's claim of malicious prosecution is appropriate because (1) it is time-barred by the relevant statute of limitations; (2) the charges were supported by probable cause and were not brought for any improper motive; and (3) Defendants Croft and Staskiewicz have qualified immunity for their actions.

### 2.    *Statute of Limitations*

Section 1983 does not have its own statute of limitations; rather, § 1983, like other civil rights statutes, contains a borrowing provision through which gaps in the federal statute, such as the absence of a specific statute of limitations, are to be filled by referring to the common law, as modified by the laws of the state in which the court holds jurisdiction.  42 U.S.C. § 1988.  Pennsylvania's statute of limitations for personal injury actions is two years and begins running when the cause of action accrues.  Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993).  Suits brought under these statutes that are based on torts alleged to have occurred in Pennsylvania are subject to a two-year statute of limitations.  Goodman v. Lukens Steel Co., 482 U.S. 656, 660-662 (1987) (Section 1981); Lake v. Arnold, 232 F.3d 360, 366, 368 (3d Cir. 2000) (Sections 1983, 1985).

Defendants' statute of limitations argument is fairly simple: the charges against Margaret were dismissed by the Bedford County Court of Common Pleas on January 28, 2003, and the instant complaint was not filed until February 1, 2005, more than two years later. In an attempt to save her claim, Margaret tries to demonstrate that the charges were not dismissed until August 2003, but the Court is unpersuaded by this argument in light of the unambiguous language of the state trial court's January 28, 2003, order.[5]

The Court is equally unconvinced that Margaret somehow failed to learn about the dismissal of the charges until sometime within the two years preceding the filing of this action,

---

[5] Margaret Crawford's primary argument against summary judgment on statute of limitations grounds is that the charges against her were not dismissed until August 2003. (Doc. No. 54, ¶ 47; Doc No. 53, at 9-10.) To support her contention that the charges against her were not dismissed until August 2003, Margaret Crawford points to an order issued by the Bedford County Court of Common Pleas dated August 11, 2003, stating: "It is hereby ORDERED, DIRECTED and DECREED, that the Defendant, Margaret Crawford, after having the charges against her dismissed shall have her arrest record expunged." (Doc. No. 55, Exhibit E) (capitalization in original). The order then directs the expungement of the charges and Margaret Crawford's arrest record and mandates the destruction of her fingerprint records and mug shots. (Id.) The issue of expungement is separate and distinct from dismissal of charges, and it does not impact when the statute of limitations began running on Margaret Crawford's malicious prosecution claim. The existence of this August 2003 expungement order in no way alters the fact that the criminal charges were dismissed on January 28, 2003.

In a second effort to create a dispute of material fact as to the date the charges were dismissed, Plaintiff states:

> It was in August of 2003 that the Bedford County Court of Common Pleas addressed the issue of the request of the Bedford County D.A.'s office for plaintiff Margaret Crawford to be accepted into and [sic] ARD program. ARD is only available for persons who have pending criminal charges. See Exhibit "A" Margaret Crawford Deposition, pp. 5-13.

(Doc. No. 54, ¶ 47.) The Court has reviewed the referenced portion of Margaret Crawford's deposition and finds that it does not support the above quoted statement. In fact, in these passages of Margaret's deposition, there is no mention at all of an ARD program, and all time references are to the early months of 2003. (See Doc. No. 55, at 2-5, Exhibit A.) The Court therefore concludes that there is no genuine dispute of material fact as to the date the charges were dismissed – January 28, 2003.

in other words, sometime on or after February 1, 2003. While Margaret's memory is a bit hazy now (see Doc. No. 54, ¶ 48), she testified in her deposition that a reporter for the Bedford Gazette named Elizabeth Croyle approached her at her workplace and asked her how she felt about the charges against her having been dropped.[6] (Doc. No. 55, at 4, Exhibit A; and Doc. No. 35, at 21, Exhibit T.) Margaret also acknowledges that Ms. Croyle's story about her was printed in the Bedford Gazette on the morning of January 31, 2003. (Doc. No. 54, ¶ 49; Doc. 35, at 10, Exhibit V, newspaper article.) Ms. Croyle testified in her deposition that she was certain that her interview with Margaret occurred prior to January 31, 2003, the morning the article ran on the front page of the newspaper. (Doc. 35, at 4, 6, Exhibit U.) Without explanation or citation to any part of the record, Plaintiff Margaret denies Defendants' properly supported statement of fact that the interview took place prior to January 31, 2003.

Without proper support, Margaret's denial of the Defendant's properly supported statement is insufficient to create a genuine issue of fact as to whether Margaret knew of the

---

[6] In the counter-statement of material facts, it is "[a]dmitted that Margaret Crawford remembers being approached by a reporter but little else." (Doc. No. 54, ¶ 48.) Margaret's deposition, however, has far more detail than this admission suggests. Specifically, Margaret testified:
> A reporter for the paper came into my place of employment and she said, I understand the charges have been dropped how do you feel? You must be rejoiced, how do you feel about it? And I remember I was quite angry and I said, they never should have happened to begin with; I never should have been charged with anything, how you think I would feel right now? And she said, would you like to give a comment? And I said, no, because your paper apparently get things wrong, you do not print things – from what was going on the court room they weren't printing things the way they should have been – I guess with what had been discussed or, I don't know, she wasn't doing very good reporting.

(Doc. No. 35, at 21, Exhibit T.) Ms. Croyle's testimony corroborates the details about the encounter. (Doc. No. 35, at 3-8, Exhibit U.)

dismissal prior to January 31, 2003. Thus, assuming Margaret did not know of the dismissal on the date it occurred (January 28th), Defendants have introduced evidence that she would have been aware of it no later than January 30, 2003. So, at the very latest, Margaret would have had until January 30, 2005 to file her complaint. See Baer v. Chase, 392 F.3d 609, 622 (3d Cir. 2004) (discovery rule applies only to the point where plaintiff knows or should know that an injury has occurred.)

In any event, there is no genuine issue of material fact that Margaret knew or should have known that the charges were dismissed prior to January 31, 2003; as a matter of law, the Court holds that Margaret Crawford's § 1983 malicious prosecution claim is barred by the applicable statute of limitations.[7]

### B. William Crawford's claim relating to his computer

William Crawford has asserted a civil rights violation against Defendant Erdley on the grounds that he unlawfully damaged and retained William's personal property without due process. During the course of the criminal investigation, the PSP executed a search warrant on the Crawford residence and seized William's computer as evidence of the unlawful sales of PSP property on eBay. Defendant Erdley was one of the officers who seized the computer, but he is not the officer William observed taking the computer apart in the house. Other than the observation of this officer dismantling the computer, William's belief that the computer is damaged is based on an exhibit placed into evidence during the criminal proceedings. The exhibit was an image taken off the computer's hard drive that, according to William, appeared

---

[7] Because Margaret's cause of action is time-barred, the court need not address the merits of the malicious prosecution claim or address Defendants' assertion of qualified immunity.

different from how it should have looked. It is undisputed that Defendant Erdley's only other involvement with the computer was that he performed a forensic analysis of the machine's hard drive before returning it to the police station.

On June 20, 2003, the state trial court ordered certain items to be produced to the criminal defendants, and the PSP provided these items to the District Attorney. Carol Ann Rose, an Assistant District Attorney for Bedford County, informed William's attorney that the prosecution intended to retain custody of the computer because William was challenging the authenticity of the original hard drive. Since the criminal charges have been resolved, the PSP has attempted on several occasions to return the computer.

In the summary judgment motion, Defendant Erdley argues, first, that there is no evidence that the computer is damaged, much less that Erdley damaged it, and second, that Erdley is not responsible for the deprivation of the computer. (Doc. No. 34, at 10.) William admits that Erdley was not the PSP officer who took the computer apart and that he does not know whether the hard drive was damaged. Erdley testified in detail in his deposition that the computer is not physically damaged and that the hard drive is in the same condition as it was found – no data has been displaced. (Doc. No 35, at 5-7, Exhibit M) ("I can sit here and tell you that every bit of data on the hard drive is exactly the same as the day it was seized"). Other than reiterating his belief that Erdley has unlawfully retained his personal property, William's brief in opposition to summary judgment does not address the alleged unlawful retention of the computer. In fact, the entirety of William's rebuttal is as follows:

> Defendant Erdley seized the computer of plaintiff William Crawford. The evidence is clear and uncontroverted that the computer of plaintiff William Crawford was operating properly prior to defendant Erdley seizing the item. After the seizure of plaintiff William

> Crawford's computer by defendant Erdley the computer was not operating properly or with the same efficiency that it had prior to the seizure by defendant Erdley. Although defendant Erdley claims that there is nothing wrong with the computer, plaintiff William Crawford disputes this contention.

This conclusory argument, without evidentiary support, is insufficient to demonstrate material facts in support of a § 1983 claim for wrongful deprivation and damage to personal property. In light of William's admissions that Erdley's involvement was limited to the initial seizure and forensic analysis of the computer, and given that the scant and speculative evidence that the computer is, in fact, damaged, the Court concludes that there is no genuine issue of material fact. There is insufficient evidence to allow the claim against Defendant Erdley to go to a trier of fact, and summary judgment will be entered in his favor on this claim.

  **C.** **James Murphy's claims relating to the property he left at the Everett Station**

    *1.* *Background*

Plaintiff James Murphy, a former PSP sergeant, was suspended from duty on December 7, 2001, because of his alleged involvement with the online sale of PSP property. At the time of his suspension, Murphy left various items of personal property at the Everett Station, primarily in his private office but also in common areas of the police station.

About three months after Murphy's suspension, Defendant Bock was transferred to the Everett Station to be the new station commander, a position he held at Everett for approximately four months before being transferred elsewhere. Bock's supervisor charged him with the duty of "cleaning up the station," which, in part, entailed an evaluation of the property on the premises. Upon his arrival, Bock compared the items at the station with an inventory list. Some items were PSP property on the station inventory list; some items apparently belonged to the PSP but were

11

not on the inventory list; some items belonged to other state agencies; and some items did not fall into any of these categories. Bock was aware that some of the items in the last category belonged to Murphy. Bock gathered up the property that he believed belonged to Murphy, and so as not to damage the items, he packed up and placed the items in a secured Turnpike Commission building behind the police station that was used for storage. Once Bock placed the items in the locked storage facility, he returned to the key to the Turnpike Commission. Some other items had been removed from the station by the acting station commander who preceded Bock.

There were a few items identified by Plaintiff Murphy that were not placed in the storage facility. The first item was a vintage PSP troop uniform which consisted of a jacket, shirt, whistle, and pistol belt with holster. This uniform was over fifty years old and was part of Murphy's collection of PSP memorabilia. Bock believed this item to be old PSP property and sent it to the PSP Troop T Procurement and Supply Officer to be "surplussed" as old or obsolete state property. Without citation to evidence of record, Murphy implies that Bock took the item for personal reasons to use in a PSP museum. This uniform has since been returned to Murphy, though he asserts that it is not in the same condition that it had been prior to Bock's handling of it. Murphy also alleges that Bock mishandled two Turnpike Commission signal lights that Murphy had acquired off a Turnpike scrap pile. Believing that the lights were Turnpike Commission property, Bock filled out the proper paperwork to have them returned and "surplussed" by the Turnpike Commission as used or obsolete equipment. The parties still dispute whether Murphy was, in fact, the owner of the signal lights.

During his four-month tenure as station commander of the Everett Station, Bock was

never contacted by Murphy about the property that Murphy had left at the station. Bock has no knowledge that any of the property placed in storage was removed from storage. Murphy admits that he has no information or evidence that Bock was responsible for any damage to Murphy's personal property.

Defendant Miller is the Commissioner of the Pennsylvania State Police. Murphy sent a letter to Miller as "Acting Commissioner" regarding the property that was left at the police station and Murphy's inability to secure the return of the items. It is unclear whether Miller actually received this letter; however, if he did receive the letter, he would have referred it to the Internal Affairs Division of the PSP ("IAD") because an internal investigation was in progress. Murphy had brought a complaint against Bock concerning the asserted loss of and damage to his personal property, so Miller's standard procedure would have been to forward the letter to IAD in case it had some bearing on the investigation. Other than the possible receipt of this letter and Miller's general awareness of Murphy's concerns regarding the property, Murphy has introduced no other evidence of Miller's involvement with his property.

### 2. *Officer Bock*

In support of summary judgment, Defendant Bock argues, first, that there is insufficient evidence that he took or damaged Murphy's property, and second, that he is entitled to qualified immunity from the claim because his actions did not contravene any clearly established constitutional right. The Court will address each argument in turn.

Bock argues that the evidence shows that he neither took nor damaged Murphy's property; rather, the record demonstrates his attempt to safeguard property left at the station for months after Murphy's suspension and to return the old PSP uniform and Turnkpike

Commission signal lights to the appropriate state agencies.  Additionally, Bock points out that both he and the acting station commander before him moved property into storage, such that Murphy "cannot say that any damages is attributable to Bock.  Nor can he say that Bock took any property Murphy claims to be missing."  (Doc. No. 34, at 8.)

Murphy, on the other hand, argues that Bock had no authority to make determinations as to who owned the property left at the station, specifically as to the old uniform and signal lights, or how the property should be stored.  Murphy argues that Bock "was taking the personal property of plaintiff Murphy for use in the PSP museum.  Although some of the items . . . was [sic] returned, this was done after defendants could no longer could [sic] hide the items."  (Doc. No. 53, at 11.)  He notes that the returned uniform was missing items when he did finally get it back.  (Id. at 12.)

Murphy admits that he has no information or evidence that Bock was responsible for any damage to Murphy's property, (Doc. Nos. 35 & 54, ¶ 19), so the Court need only consider whether Bock wrongfully took and retained Murphy's property.  While both the complaint and Murphy's arguments assert that Defendants Bock and Miller were improperly motivated to take his memorabilia for use in a PSP collection, Murphy attested that he has no "hard fact evidence" to support his personal suspicion.  (Doc. No. 55, at 19, Exhibit B, Murphy Dep. at 71-72).  The Court further notes that neither Murphy's brief in opposition to summary judgment nor the counter-statement of material facts points to the portions of the record that provide support for the assertion of improper motive.

Bock's act of placing Murphy's property in the secured facility and storing them there, under the circumstances presented in this case, does not amount to a taking without due process.

Murphy left the property at the station after his suspension, and it was still there three months later when Bock arrived with orders to "clean up" the station. While he was station commander, Bock did not know Murphy was seeking the return of the property, as Murphy never contacted Bock directly with such a request. While Bock did transfer the uniform internally to another PSP office for it to be processed as old state equipment, the record does not indicate that he had any involvement with the uniform after surplussing it. Moreover, the uniform was returned to Murphy, and while it was not in perfect condition, Murphy has admitted that he has no evidence that Bock damaged his items. The Turnpike Commission signal lights pose a somewhat different problem. The parties dispute Murphy's ownership of the signal lights. If the lights were not Murphy's to begin with, he certainly has not been deprived of property without due process. Based on the evidence properly before the Court, ownership of the lights cannot be determined.[8]

In any event, assuming that Plaintiff Murphy could show that Officer Bock violated his constitutional rights, Officer Bock has qualified immunity from the claim. Qualified immunity entails a two-part analysis. First, the Court must consider whether a constitutional violation in fact occurred. Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, the Court must determine

---

[8] Defendants do introduce unsworn statements in support of their contention that Plaintiff Murphy could not have acquired a property right in the Turnpike Commission's signal lights, even if they were placed on a scrap pile. (See Doc. No. 55, Exhibits F & H, Unsworn Declarations by Jakubiak and Hess, respectively.) However, these submitted statements were unsworn declarations and therefore do not meet the requirements of Rule 56. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158 n.17 (1971) ("The statement, being unsworn, does not meet the requirements of Federal Rule of Civil Procedure 56(e). . ."); Brown v. Thomas, 172 F. App'x 446, 451 (3d Cir. 2006) ("An unsworn statement does not constitute the kind of competent evidence necessary to create a genuine issue of material fact at summary judgment."); Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005) (upholding as appropriate the district court's refusal to consider unsworn statement in disposing the motion for summary judgment). The Court has not considered these unsworn statements.

whether the right violated was "clearly established."  Id. at 202.  The relevant inquiry at the second step is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  Id.  After considering the circumstances surrounding Bock's actions, the Court concludes that he could not reasonably be expected to know that surplussing items he reasonably believed to belong to the state (the uniform) and the Turnpike Commission (the signal lights) was unlawful.  (See Doc. No. 55, at 11, Exhibit C, Bock Dep. at 42) ("I was of the belief that you could not own that type of equipment.  Nobody could own that type of equipment that belonged to the state.").  Nor could he reasonably be expected to know that placing Murphy's other property in a locked storage area and maintaining it there during his tenure at Everett violated the Fourth, Fifth, and/or Fourteenth Amendments, especially given that Murphy never asked him to turn over the property.  Because a reasonable officer in Bock's position would not have realized that he was violating the law, Bock has qualified immunity from suit.

      Summary judgment will be granted for Bock on this claim.

          3.     *Commissioner Miller*

      It is a fundamental tenet of § 1983 jurisprudence that in order to be held liable, an individual defendant must have had personal involvement in the acts alleged.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  To establish a basis for imposing liability on Miller, Murphy points to a letter that he sent to Miller stating that numerous items of his personal property were improperly removed from Murphy's office and had not been returned.  (Doc. No. 55, at 7, Exhibit B.)  Murphy argues that, despite this personal request that Miller investigate the matter, "defendant Miller knowingly and willfully did not pursue the claims of plaintiff Murphy in furtherance of the acts of the other defendants and their motivation in taking

and stealing the personal property of the plaintiff Murphy for the benefit of them personally and the PSP museum." (Doc. No. 53, at 13-14.)  Again, the Court highlights the lack of evidence Murphy offers to support his argument that Defendants Bock and Miller were improperly motivated to take his memorabilia for part of a PSP collection. (Doc. No. 55, at 19, Exhibit B, Murphy Dep. at 71-72) (Murphy admitting he has no "hard fact evidence" on this matter).

Because the failure to respond to the letter is the only specific act or omission Plaintiff Murphy mentions, the Court will turn its attention to this allegation. Miller testified that he thought he may have received a letter from someone about Murphy's claim, but explained that

> any time anybody sends a letter to me that has anything to do with something that there's an open Internal Affairs investigation on, it gets shipped through the Deputy Commissioner of Professional responsibility after the Bureau of Integrity and Professional Standards because there may be something that is the ne new information that the investigator needs . . . if I got a letter from somebody about the case, that's what would have happened to it.

(Doc. No. 35, at 6, Exhibit I, Miller Dep. at 37.) Here, Defendant Miller's act of forwarding Murphy's correspondence on to the IAB investigator specifically charged with investigating Murphy's property and the PSP's alleged mishandling of the same seems entirely appropriate and reasonable under the circumstances. Beyond the receipt of this letter, Plaintiff has introduced no evidence of Miller's personal involvement in the alleged deprivation and damage to his property. This falls short of the material personal involvement that is required to impose liability under § 1983 for a violation of constitutional rights; accordingly, summary judgment will be entered for Defendant Miller.

**IV.     CONCLUSION**

After considering the parties' arguments and evaluating the evidence offered in support of and opposition to Defendants' motion for summary judgment, the Court finds that there is no genuine issue of material fact in this case and, for the reasons set forth above, concludes that summary judgment must be entered for Defendants. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARGARET H. CRAWFORD; WILLIAM CRAWFORD; LARHONDA A. BATZEL; and JAMES F. MURPHY, | : : : : : |
| Plaintiffs | : : |
| v. | : CIVIL ACTION NO. 1:05-CV-214 : : (Chief Judge Kane) : |
| JEFFREY MILLER; STEVEN KREMPASKY; JAMES BOCK; KIRBY CROFT; CHARLES STASKIEWICZ; and ROBERT ERDELY, | : : : : : : |
| Defendants | : : |

**ORDER**

  **AND NOW**, this 4th day of January, 2007, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 33), filed in the above-captioned matter, and for the reasons set forth in this Court's Memorandum Opinion filed herewith, **IT IS HEREBY ORDERED** that Defendants' motion is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the file.

                  s/ Yvette Kane
                  Yvette Kane, Chief Judge
                  United States District Court
                  Middle District of Pennsylvania